## WASHINGTON, BALTIMORE & ANNAPOLIS ELECTRIC RAILROAD COMPANY

*vs.*

## JOHN WELDON.

### *Negligence: damages.*

Where it was proved that signal torpedoes, similar to those used by a railway, had been placed right at the passenger platform of one of its stations, and by the explosion, a person lawfully engaged at the station platform, was injured because of the fright thereby caused a horse hitched to a wagon in which the party was standing, a case was presented proper for the consideration of the jury as to whether the torpedoes were not placed there by the negligence of the railway's agents.    p. 323

*Decided April 6th, 1916.*

Appeal from the Circuit Court for Prince George's County.   (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The following are the prayers the Court directs should be included in the report of the case:

*Pltff.'s 1st Prayer.*—Under the pleadings in this case, if the jury find from the evidence in this case that the defendant transported certain goods of the plaintiff and of Arthur Brown to its station in Prince George's County, Maryland,

known as High Bridge Station; that on, to wit, the 8th day of May, 1915, for himself and the said Brown, the plaintiff went in his wagon drawn by one horse to said station to get said goods; that said horse was well broken and gentle and accustomed to the passage of defendant's cars, without being frightened thereby; that the plaintiff was accompanied by two men; that he was so upon the premises of the defendant and then and there standing in his said wagon and receiving from said men on the ground said goods when a car of the defendant passed said station; that said car in passing said station ran over and exploded two torpedoes which were then and there on the defendant's track, should they find the same; that said torpedoes had been negligently, carelessly and unnecessarily placed on said track by the servants of the defendant at said station; that the plaintiff did not know of the existence of said torpedoes on said track; that the said explosions frighted the said horse of the plaintiff, and caused him to suddenly jump and run off; that the plaintiff was thereby thrown out of his said wagon and fell upon the ground and so injured; then their verdict must be for the plaintiff, if the jury further find that the plaintiff was at the time of the accident using due care and caution on his part.   (*Granted.*)

*Pltff.'s 3rd Prayer.*—If the jury find that the plaintiff, without negligence on his part, was injured by being thrown out of his wagon upon the ground while at High Bridge Station of defendant; that he was then and there receiving freight there transported for him and one Arthur Brown by the defendant, and that he was so thrown out by the horse attached to said wagon suddenly jumping and running away, and that said jumping and running away was caused by the explosion of two torpedoes which had been placed on the defendant's tracks at said station by the defendant's employees, should they find the same; that said explosion was caused by a car of the defendant then and there running over said torpedoes and that the rules of the defendant forbade its employees from placing torpedoes at its stations, then the plaintiff is entitled to recover.   (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE,. THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,. JJ.

*George Weems Williams,* for the appellant.

*F. Snowden Hill,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This appeal is taken by the defendant from a judgment for three hundred and fifty dollars entered against it in the Circuit Court for Prince George's County at the suit of the appellee for personal injuries. The defendant is a corporation, and, at the time the plaintiff was injured, was operating an electric railroad between the cities of Baltimore, Washington and Annapolis. The defendant is a carrier of passengers and freight. One of the stations on its road between Baltimore and Washington is located in Prince George's County and known as "High Bridge Station," where passengers and freight are received and discharged. On May 8, 1915, the plaintiff went to this station in a one-horse wagon to get two gates belonging to himself, and also certain boxes belonging to one Arthur Brown, who had requested him to remove them from the station. These gates and boxes had been transported by the defendant to the station for the use of the plaintiff and Brown, and had been deposited by it upon the ground near the defendant's tracks. The declaration alleged that "while so upon said premises and engaged in loading said gates and boxes upon his said wagon and while standing in his said wagon, without any negligence, wrong, default, or want of due care on his part, the defendant by its servants in charge of the operation of its trains upon and over said railroad needlessly, carelessly and with gross negligence, and heedlessly, caused two torpedoes to be suddenly and violently exploded upon its said railroad, in the immediate vicinity of the said premises, with useless,,

unusual, startling and terrifying noises, whereby the said horse of the plaintiff was greatly frightened and he suddenly started and ran away and thereby the plaintiff was thrown off from his said wagon down upon the ground, whereby he was greatly bruised about his head, body, arms and legs, and externally and internally injured in and about the same; that by reason of the said injuries the plaintiff was ill for the space of one month, was compelled to expend a large sum of money, to wit: the sum of fifty dollars for medical attendance and care, suffered great pain, was prevented from pursuing his trade as a carpenter and was made a cripple for life."

The evidence shows that the plaintiff was painfully injured. One of his ribs was broken and two others injured, and that at the time of the trial he was suffering from the effects of the injury. Besides, he incurred an expense of fifty dollars for medical attendance.

The torpedoes mentioned in the declaration are what are known as "fibre case torpedoes" and are used by the defendant as danger signals to prevent collisions. Mr. Doyle, the General Manager, of the defendant company, said that "if a train is late or off time or delayed for any reason, the conductor or the person responsible for the safety of the train places one or two torpedoes on the rails as an indication to the train following that they had better be on the look out for the train ahead." The explosion of two torpedoes is a signal to run slowly, and of one an explosion is a signal to stop immediately. Mr. Doyle explained "that, as a general rule, the conductor, in placing these torpedoes before he gets to a local station, drops off a pole length behind the car and then runs on to where the car has to stop and take on passengers." It was contrary to the practice of the defendant to put torpedoes upon the tracks at stations, and to do so was a violation of a rule of the company which provided that: "Torpedoes must not be placed near stations or road crossings where persons are liable to be injured by them."

The torpedoes used by the defendant were kept in a fire-proof cabin at the Naval Academy Junction office, and were taken out by the conductors. The company operates over its road about 144 trains every 24 hours, and used about 8 gross of torpedoes a month. There is a conflict in the testimony as to the violence of the explosion of these torpedoes. One witness for the defendant said that "the volume of sound is like the crack of a revolver," but it is conceded that the explosion must be sufficiently loud to overcome the noise of a running train. A witness for the plaintiff testified that he had frequently heard torpedoes exploded on the defendant's road, and on some occasions at a distance of a mile and three-quarters.

The testimony offered on behalf of the plaintiff as to the circumstances under which he was injured tended to show that the horse he was driving was gentle and quiet and was not afraid of cars; that he had stopped his wagon between the freight platform and the passenger landing; that his horse was near the tracks with his head turned towards Washington; that the reins were lying in the front of the wagon, where the plaintiff who was standing in the wagon, could easily reach them. The plaintiff saw a car approaching the station going in the direction of Washington. At that time two witnesses for the plaintiff, Frank Fletcher and Edward Chittam, were on the ground near the horse handing boxes to the plaintiff who was in the wagon. The plaintiff testified that he saw the car coming and that he looked at the horse and it was perfectly quiet; that he thought he would take hold of the reins if the horse attempted to move away, but it stood perfectly quiet until an explosion occurred which caused the horse to jump and run away, and the plaintiff was thereby thrown from the wagon and injured.

We think there can be no doubt that the evidence tended to show that the horse was frightened and ran away in consequence of the explosion of two torpedoes which had been placed upon the rails or rail of the defendant's track near the passenger platform at the station, and that the passing

car running over these torpedoes caused them to explode. The plaintiff testified positively to this. Frank Fletcher testified that he and Chittam were handing boxes to the plaintiff, who was standing in the wagon, when, "suddenly a train coming south exploded two torpedoes," and that the sudden noise made the horse bolt and throw the plaintiff backward to the ground; that the torpedoes were on the track at the station. This testimony was fully corroborated by that of Chittam.

Under these facts the questions of negligence on the part of the defendant and of due care on the part of the plaintiff were properly left to the jury. The plaintiff was rightly upon the premises of the defendant, engaged in a lawful business, and it owed him a duty to use reasonable care in the operation of its cars so as to avoid injuring him. The explosion of torpedoes on the rails at the station was calculated to frighten horses and cause injury, and did in fact cause the plaintiff's horse to run away. Under these circumstances the jury might have well found that the defendant did not act with due care. Nor does the evidence show such prominent and decisive act or omission of duty on the part of the plaintiff as would have justified the Court in declaring him guilty of contributory negligence. The horse was quiet and accustomed to the cars; the reins were in a position where the plaintiff could have reached them; two men were near the horse and he showed no evidence of nervousness or fright as the car approached, and the evidence tends to show that the sudden explosion of the torpedoes was the sole cause of his running away whereby the plaintiff was injured.

It was earnestly contended that no evidence was offered from which the jury could properly infer that the torpedoes were placed on the rails by the agents or servants of the defendant. It is true that no one saw an agent or employee of the defendant place the torpedoes on the rail, but that fact, like any other fact, may be proved either by direct evidence or by the proof of circumstances from which its existence may, as a conclusion of fact be fairly and reasonably

inferred. We have referred to the use of torpedoes by the
defendant as signals, the quantity used, and the manner in
which they were placed upon the rails by the conductors,
who had free access to them and carried them on the trains,
and, under these circumstances, the fact that these torpedoes
were on the rails of the defendant and were exploded by the
passing car is sufficient to have taken the case to the jury
upon the question whether or not they were left upon the
rails by the defendant's servants.

At the conclusion of the whole case the Court granted
three prayers on behalf of the plaintiff, and two on behalf
of the defendant. The reporter will set out the plaintiff's
first and third granted prayers. The defendant's granted
prayers were as follows:

"Defendant prays the Court to instruct the jury that if
they shall find from the evidence that the accident mentioned
in the declaration would not have happened if the plaintiff
had at the time of said accident used such care and caution
as an ordinarily prudent man would have used under similar
circumstances, the verdict of the jury must be for the de-
fendant.

"Defendant prays the Court to instruct the jury that the
defendant had the right in the operation of its railroad, to
use torpedoes, and if the jury find from the evidence that
the plaintiff was injured by reason of his horse being fright-
ened by the explosion of a torpedo, the verdict of the jury
must be for the defendant, unless the jury shall find from
the evidence that the agents or employees of the defendant
failed to use due and proper care in the placing of the tor-
pedo or torpedoes, the explosion of which is alleged to have
frightened the plaintiff's horse, and unless they shall further
find that the accident mentioned in the declaration was not
caused by any failure on the part of the plaintiff to use such
care and caution as the jury may find a reasonable prudent
man would have used under like circumstances."

The plaintiff's third prayer is not justly subject to the
criticism that it allows recovery upon the *mere* failure of

the defendant to observe one of its rules.  Properly construed, it is predicated upon facts which constituted negligence on the part of the defendant which connected that negligence with the injuries sued for.  The defendant offered twelve other prayers to take the case from the jury on various grounds, which have been disposed of adversely to it by what we have already said, and these grounds were also made the bases of special exceptions to the plaintiff's prayers.  The Court properly overruled these prayers and special exceptions.

There is great doubt as to whether there was any evidence of permanent injury to the plaintiff, and the plaintiff's second prayer which submitted that question to the jury was probably improperly granted.  But as the plaintiff was severely injured and the amount of the recovery so small it does not appear that the defendant was injured by that ruling.  The jury evidently did not allow for permanent injury.

The judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*